UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-80581-CIV-MARRA/MATTHEWMAN

MELISSA LEIGH RANDOLPH, on behalf of
herself and all others similarly situated,

       Plaintiff,

vs.

J.M. SMUCKER CO., an Ohio Corporation,

       Defendant.
_____/

**OPINION AND ORDER**

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Class Action Complaint [DE 10] and Defendant's Motion Requesting Judicial Notice in Support of Defendant's Motion to Dismiss Class Action Complaint [DE 11]. Both motions have been fully briefed and are ripe for this Court's consideration. The Court has reviewed all of the papers submitted by the parties regarding the pending motions; the entire file; and is otherwise duly advised in the premises.

**I. Request to take Judicial Notice**

Since the Court may rely upon some of the documents contained within Defendant's Motion Requesting Judicial Notice, the Court will address that motion first. Pursuant to Fed. R. Evidence Rule 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be

1

questioned. "The contents of the Federal Register shall be judicially noticed . . . ."

44 U.S.C. §1507.

    Defendant asks this Court to take judicial notice of the following documents:

1.     a statement of policy by the Food and Drug Administration, printed in the Federal Register, dated May 29, 1992, and titled "Statement of Policy: Foods Derived From New Plant Varieties;"

2.     the Food and Drug Administration's Guidance on Consultation Procedures regarding its 1992 Policy Statement, dated October 1997;

3.     a request for information regarding a statement of policy by the Food and Drug Administration, printed in the Federal Register, dated April 28, 1993, and titled "Food Labeling; Foods Derived From New Plant Varieties";

4.     Food and Drug Administration Draft Guidance on Voluntary Labeling, titled "Voluntary Labeling Indicating Whether Foods Have or Have Not Been Developed Using Bioengineering," released for comment in January 2001;

5.     a report released by the United States Department of Agriculture on June 30, 2011, titled "Acreage;"

6.     a transcript of testimony presented by the Food and Drug Administration before the House Subcommittee on Basic Research, dated October 19, 1999;

7.     excerpts from the Food and Drug Administration web site, from a page titled "Plant Biotechnology for Food and Feed";

8.     a transcript of testimony presented by the Food and Drug Administration before the Senate Committee on Agriculture, Nutrition and Forestry, dated June 14, 2005;

9.     Smucker's Statement Regarding Genetic Modification; and

10.     a page from the Food and Drug Administration website titled "What is the meaning of 'natural' on the label of food?"

[DE 11 at 1-2].

    Plaintiff generally objects to the use of these exhibits "to establish law or facts that do not

exist concerning labeling or the safety of genetic modification ("GM") foods . . . ." [DE 20 at 4]. Plaintiff cites to *Briseno v. ConAgra Foods, Inc.*, No. CV 11-05379 MMM (AGRx), 2011 U.S Dist. LEXIS 154750, *21-22 & n.18 (C.D. Cal. Nov. 23, 2011) (where the court took judicial notice of the same document listed as document 4 above, but concluded that it did not support an assertion made by ConAgra). Whether or not these documents will support the positions of the parties is not the inquiry made by a court in determining whether to take judicial notice of a document.

Plaintiff only raises a specific objection to Exhibits 6 and 8, arguing that the transcripts of this Congressional testimony are not adjudicative facts and are not relevant to the motion to dismiss before the Court [DE 20]. Defendant does not address this objection in its reply papers.

The Court takes judicial notice of Exhibits 1 and 3 pursuant to 44 U.S.C. §1507. The Court takes judicial notice of Exhibits 2, 4, 5, 7, 9[1] and 10. In doing so, the Court simply accepts that these are true copies of the items. The Court does not take judicial notice of the various arguments made by the parties relative to the meaning and import of these documents.

Finally, the Court denies the request to take judicial notice of items 6 and 8. First, although described by Defendant as a "transcript", these items are copies of statements purportedly given before Congress. Furthermore, the Court finds that these are not adjudicative facts.

---

[1]Exhibit 9 is mentioned in the Complaint [DE 1 at ¶17].

## II.  Motion to Dismiss

### A.  Legal Standard

With respect to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court observes first that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has held that "[w]hile a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'". *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

As a general rule, the Court must "limit[] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule 12(b)(6) motion to dismiss.  *Grossman v. Nationsbank,*

*N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(internal quotation marks and citation omitted).  Fed. R. Civ. P. 12(d) mandates that if matters outside the pleadings are presented to the court and not excluded, the motion must be treated as one for summary judgment under Rule 56.  There is an exception to this rule for documents that are (1) central to the plaintiff's claim and (2) undisputed.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  Undisputed means that the authenticity of the document is not challenged.  *Id*.

### B.  Background Facts

Plaintiff has brought this action on behalf of herself and all others similarly situated asserting claims arising out of Defendant's labeling of certain of its Crisco cooking oils as "All Natural" [DE 1 at ¶¶1-2].  Plaintiff states that these oils are not "All Natural" because they are "made from genetically modified plants ("GM") or genetically modified organisms ("GMO") and are so heavily processed that they have no chemical resemblance to the ingredients from which they were derived." [*Id*. at ¶3].

Plaintiff alleges that Defendant has violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") [DE 1 at ¶¶ 38-46]; that Defendant engaged in false and misleading advertising under Fla. Stat. § 817.41 [DE 1 at ¶¶ 47-53]; that Defendant was unjustly enriched by its unlawful, unfair, misleading and deceptive practices and advertising [*Id*. at ¶¶ 54-60]; and that Defendant breached an express warranty that the Crisco oils were "All Natural" [*Id*. at ¶¶ 61-67].

Defendant has moved to dismiss the Complaint, arguing first that "Plaintiff has not alleged with plausibility or particularity that the Crisco oils contain any bioengineered ingredients or artificial ingredients" [DE 10 at 3], and, therefore, the Complaint fails to meet the *Ashcroft v. Iqbal* requirements.  Plaintiff also argues that the absence of particularized factual

allegations does not meet Fed. R. Civ. P. Rule 9(b)'s pleading requirements for those claims sounding in fraud [*Id.*].

Second, Defendant argues that Plaintiff's claims are preempted under the Food and Drug Administration's ("FDA") labeling policies on bioengineered ingredients, as well as federal labeling regulations [*Id.* at 3-4].  In the alternative, Defendant argues that if the Court does not find that Plaintiff's claims are preempted, it should dismiss them under the primary jurisdiction doctrine [*Id.* at 4].

### C.  Discussion

#### 1.  Plaintiff has sufficiently stated a claim under the *Ashcroft v. Iqbal* criteria.

Defendant argues that the Complaint must be dismissed because it does not allege with particularity or plausibility that Crisco Oils contain GMO or artificial ingredients and does not plead that mere processing renders them non-natural [DE 10 at 7-10].  Defendant criticizes Plaintiff's reliance upon Defendant's "Statement Regarding Genetic Modification", which states that it is possible that some of its products may contain ingredients derived from biotechnology [*Id.* at 7-8].  Defendant points out that this Statement does not even specifically identify Crisco products.

Regarding the manner in which the products are processed, Defendant notes that Plaintiff never alleges that the products used during processing remain in the Crisco oils at issue [*Id.* at 9]. Defendant also argues that Plaintiff's processing allegations do not contain sufficient specificity to satisfy Rule 9(b) [*Id.* at 10].

In response, Plaintiff states that she alleges that the Crisco oils are made from GM or GMO [DE 19 at 8].  The Court's review of the Complaint confirms that this is accurate.  The

Complaint contains the following paragraph: "But these Crisco Oils are not 'All Natural'. The oils are made from genetically modified plants ("GM") or genetically modified organisms ("GMO") and are so heavily processed that they have no chemical resemblance to the ingredients from which they were derived." [DE 1 at ¶3]. Paragraph 16 alleges that "Crisco Oils are derived from plants grown from GMO seeds that are engineered to, among other things, allow for greater yield and to be resistant to pesticides." [*Id*. at ¶ 16].

Plaintiff also argues that Defendant sources its ingredients from U.S. commodity suppliers and that the majority of corn (70%), soy (90%) and canola (80%) crops are GM [DE 19 at 8]. Defendant correctly points out that these statistical allegations do not appear in the Complaint [DE 22 at 5]. Since this is not in the Complaint, the Court is not considering these statistics in ruling on this motion.

Plaintiff argues that Defendant has misconstrued her claims relative to the processing of the oils [DE 19 at 9]. Plaintiff states that she is not alleging that the mere processing of a product renders it unnatural [*Id*. at 9]. She states that she distinguishes Defendant's processing from an extraction process that would allow oils to retain their natural chemical composition [*Id*.].

The Court notes the Complaint alleges that: "In addition to the use of genetically modified ingredients, Defendant uses various processes by which the raw ingredients are converted to these cooking oils render [sic] the final Products chemically-derived, man-made, and non-natural. While they retain the non-natural genetic attributes of the GM crops, the Products no longer bear any natural chemical resemblance to their source crops as a result of the extensive process by which they are refined." [DE 1 at ¶22].

Plaintiff also points out that her processing claims are not dependent upon artificial

7

ingredients remaining in the oils [DE 19 at 11].  "The claim is that the extensive processing itself chemically alters the oils such that the final product is not 'All Natural' corn, soy, or rapeseed oil."

As to Defendant's argument that the Complaint does not meet the requirements of Rule 9(b), Plaintiff argues that her FDUPTA claim is governed by Rule 8(a), not Rule 9(b).  But even assuming that Rule 9(b) applies, Plaintiff asserts that she has adequately pled her claims [DE 19 at 11-13].  The Court is aware that federal courts in this district have ruled inconsistently on this issue.  *Compare Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1354-55 (S.D. Fla. 2012)(finding that the pleading requirements of Rule 9(b) do not apply to a FDUPTA claim) with *Llardo-Carreno v. Gudiant Corp.*, No. 09-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011)(finding that Rule 9(b) did apply).

Defendant also argues that even apart from its Rule 9(b) argument, Plaintiff's FDUPTA allegations fail to state a claim [DE 10 at 18-20].  Defendant's argument, however, raises questions of fact that are not appropriate for this Court to address on a motion to dismiss.  For example, Defendant argues that Plaintiff has provided no basis for her allegation that the presence of bioengineered ingredients misleads consumers [*Id*. at 18-19].  Ultimately, that will be a jury question.

A claim under FDUPTA has three elements: (1) a deceptive act or unfair practice; (2) causation and (3) actual damages.  *Mantz v. TRS Recovery Servs., Inc.,* 11-80580-CIV, 2011 WL 5515303 at *2 (S.D. Fla. Nov. 8, 2011).  All three of these elements have been pled in the Complaint.  It is unnecessary for this Court to weigh in on the issue of whether Rule 9(b) applies to a FDUPTA claim, as Plaintiff has pled her FDUPTA claim with sufficient particularity to

satisfy Rule 9(b) and has given Defendant fair notice of the conduct that forms the basis of her claim.  The Court finds no basis to dismiss this claim.

Defendant similarly argues that Plaintiff has failed to plead her false advertising claim with sufficient particularity [DE 10 at 20-21].  A misleading advertising claim must allege that (1) Defendant made a misrepresentation of a material fact; (2) Defendant knew, or through the exercise of reasonable care or investigation could or might have known of the falsity or misleading nature of the statement; (3) Defendant intended that the representation would induce another to rely and act upon it; and (4) Plaintiff suffered injury in justifiable reliance on the representation.  *See Joseph v. Liberty Nat. Bank*, 873 So.2d 384, 388 (Fla. 5th DCA 2004).  As with her FDUPTA claim, the Court concludes that this claim has been pled sufficiently.

Plaintiff has adequately alleged that the Crisco products at issue contain GM or GMO; has adequately alleged that Defendant's processing rendered the final products chemically-derived, man-made, and non-natural; and has adequately pled her false advertising claim.  The Supreme Court has held that "[w]hile a complaint attacked by a 12(b)(6) motion to dismiss **does not need detailed factual allegations**, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added, internal citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, **accepted as true**, to 'state a claim to relief that is plausible on its face.'".*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(emphasis added, quotations and citations omitted).

The Complaint is far from the kind of bare bones complaint that would warrant dismissal at this stage of the proceedings.  Accepting as true the allegations in the Amended Complaint, it contains sufficient facts to state a claim that is plausible on its face.

**2.  Plaintiff's Claims Are Not Preempted Nor Does the Primary Jurisdiction Doctrine Apply.**

Defendant argues that Plaintiff's state law claims are preempted, because they conflict with FDA policies on bioengineered foods and food labeling regulations [DE 10 at 11-17].  In the alternative, Defendant argues that the Complaint should be dismissed because the FDA has primary jurisdiction over matters of food labeling [*Id*. at 17-18].

Plaintiff argues that her claims are not preempted [DE 19 at 14-22], and the primary jurisdiction doctrine should not be applied [*Id*. at 22-25].  She notes that Defendant mischaracterizes her claim to require Defendant to disclose the GM ingredients, which it says would conflict with federal policy [*Id*. at 16].  Plaintiff states that she "challenges the 'All Natural' advertising claim; she does not contend defendant must include 'GM' on its ingredient list." [*Id*. at 17].

Although the FDA has issued policy statements regarding bioengineered foods, there are no federal laws, regulations or policy statements that specifically address the important issue in this case of whether bioengineered foods may be labeled "All Natural".  In fact, the FDA has specifically declined to address this question at this time.

In 2013, three Federal Court Judges referred the question of whether food products containing ingredients produced using bioengineered ingredients may be labeled "Natural" or "All Natural" or "100% Natural.  On January 7, 2014, the FDA issued a letter to these Judges.

*See Cox v. Gruma Corp.*, No. 4:12-cv-6502-YGR (N.D. Cal.)(DE 70).  The letter states, in part, that the

> FDA has not promulgated a formal definition of the term "natural" with respect to foods.  The agency has, however, stated that its policy regarding the use of the term "natural" on food labeling means that "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 Fed. Reg. 2302, 2407(1993).

*Cox v. Gruma*, DE 70 at 2.

The letter goes on to note that "[i]f the FDA were inclined to revoke, amend or add to this policy, we would likely embark on a public process, such as issuing a regulation or formal guidance, in order to determine whether to make such a change; we would not do so in the context of litigation between private parties." *Id.*  The FDA notes that given the complexities of the issue and the competing concerns among and between stakeholders, the FDA would engage the public in this process. *Id.*  The FDA would also involve other Federal agencies. *Id.*  The FDA says that "priority food public health and safety matters are largely occupying the limited resources that FDA has to address foods [sic] matters."  Finally, it concludes that "[b]ased on the foregoing considerations, we respectfully decline to make a determination at this time regarding whether and under what circumstances food products containing ingredients produced using genetically engineered ingredients may or may not be labeled 'natural'." *Id*. at 3.

The FDA has done nothing to date that preempts any of Plaintiff's claims.  Furthermore, having declined to address the issue at this time, there is no basis for this Court to dismiss or stay the current action in deference to the FDA's regulatory authority.

### 4.  Plaintiff Has Standing to Bring Claims As to Oils She Did Not Purchase.

Defendant argues that Plaintiff does not have standing to pursue claims as to Crisco oils she did not purchase [DE 10 at 20].  Defendant points to Plaintiff's allegation in ¶10 of the Complaint that she "purchased one or more of the Products for personal use . . . ."  Plaintiff responds that she is challenging the business practice that is common to each of the four oils mentioned in the Complaint and that Defendant's argument is a premature Rule 23 typicality or adequacy argument [DE 19 at 27].  The Court agrees with Plaintiff's position that the class certification stage is the appropriate time to address her standing to assert claims relative to particular products. *See, e.g., Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881 (N.D. Cal. 2012).

### 5.  Plaintiff Fails to State a Claim for Breach of Express Warranty.

Defendant argues that Plaintiff fails to state a claim for breach of express warranty both because the Complaint does not meet the requirements of Fla. Stat. § 672.313 and because the Complaint does not allege notice to the seller of the breach [DE 10 at 21].  To plead a breach of express warranty in Florida, the Complaint must include an allegation that notice was given to the seller of the breach.  Fla. Stat. § 672.607(3).  The Complaint sufficiently alleges an affirmation of fact.  It does not merely assert opinion, value or commendation of the goods.  However, the Complaint does not contain an allegation that notice of the breach was given to the seller [DE 1 at ¶¶61-67], and, therefore, it fails to state a claim.

### 6.  Plaintiff States a Claim for Unjust Enrichment.

Defendant moves to dismiss Plaintiff's claim for unjust enrichment because unjust

enrichment is not available where there is an adequate legal remedy [DE 10 at 21].  Defendant argues that if Plaintiff's allegations of misrepresentation are true, she will have legal remedies. Plaintiff responds that she has adequately stated a claim for unjust enrichment [DE 19 at 28].

> A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof. *Fla. Power Corp. v. City of Winter Park,* 887 So.2d 1237, 1241 n. 4 (Fla.2004) . . . .

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).

Plaintiff points out that she has pled that she conferred a benefit on Defendant by paying the purchase price; Defendant accepted and retained that benefit; and it would be inequitable to permit Defendant to retain that purchase price [DE 19 at 28, citing ¶¶ 54-60 of the Complaint]. The Complaint states that Plaintiff and other class members purchased the products at issue at a premium [*Id*. at ¶55].  It seeks "restitution of the excess amount paid for the Product and disgorgement of the profits Defendant derived from sales of the Products." [*Id*. at ¶60].

First, it bears noting that Defendant is seeking to have all of Plaintiff's legal claims dismissed.  Second, it is well established that a party may plead alternative theories of her case. Fed. R. Civ. P. 8(d)(2).  The Court finds that Plaintiff has adequately pled her unjust enrichment claim in the alternative to her other claims, and it should not be dismissed at this stage of the litigation.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

1. Defendant's Motion Requesting Judicial Notice in Support of Defendant's Motion to Dismiss Class Action Complaint [**DE 11**] is **GRANTED IN PART AND**

        **DENIED IN PART** consistent with this Opinion and Order.

2. Defendant's Motion to Dismiss Class Action Complaint [**DE 10**] is **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion and Order. Count IV of the Complaint [**DE 1**] fails to state a claim and is **DISMISSED WITHOUT PREJUDICE**. Should Plaintiff wish to do so, she may file an amended complaint addressing the deficiency in Count IV within 14 days of the entering of this Order.

3. Pursuant to this Court's Order at **[DE 17]**, the Parties are to conduct their Rule 26(f) and scheduling conference within 14 days of the entering of this Order.

       **DONE AND ORDERED** in Chambers in West Palm Beach, Palm Beach County, Florida, this 13th day of March, 2014.

                                                                      _____
                                                                        KENNETH A. MARRA
                                                                        United States District Judge