**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-CIV-80581-BLOOM/Valle**

MELISSA LEIGH RANDOLPH,
on behalf of herself and others similarly
situated,

       Plaintiff,

v.

THE J.M. SMUCKER CO.,
an Ohio corporation,

       Defendant.

_____/

**ORDER**

     This matter is before the Court upon Plaintiff Melissa Leigh Randolph's Motion to Certify Class, ECF No. [36], and Defendant J.M. Smucker Co.'s Motion to Strike New Evidence and Expert Report Submitted with Plaintiff's Reply Brief, ECF No. [60].  The Court has reviewed the motions, all supporting and opposing filings, and the record in this case, and is otherwise fully advised in the premises.

**I. INTRODUCTION AND BACKGROUND**

     Defendant J.M. Smucker Co. ("Defendant"), an Ohio corporation, manufactures, markets, and sells various cooking oils under the Crisco brand name.  Initially introduced in 1911, the oils are primarily utilized for baking, frying, marinades, and dressings.  Opp., ECF No. [47] at 13.  According to Defendant, individuals purchase Crisco for a variety of reasons.  *Id.* at 15-16.  Currently, Defendant produces nine varieties of oil, all bearing the Crisco name: Crisco Pure Vegetable Oil, Crisco Pure Canola Oil, Crisco Pure Corn Oil, Crisco Natural Blend Oil, Crisco

1

Frying Oil Blend, Crisco Canola Oil with Omega-3 DHA, Crisco 100% Extra Virgin Olive Oil, Crisco Pure Olive Oil, and Crisco Light Olive Oil.  *See id.* at 13.  Only four of these are at issue in this litigation.

On June 7, 2013, Plaintiff Melissa Leigh Randolph ("Plaintiff") commenced this action, on behalf of herself and others similarly situated, alleging that Defendant engaged in false, unfair, deceptive and/or misleading trade practices by misrepresenting to consumers that Crisco oils are "All Natural," when they are, in fact, made from genetically modified plants and processed with harsh chemicals.  *See* Compl., ECF No. [1] at ¶¶ 1-3, 12, 22.  Plaintiff avers that, because of these misrepresentations, she was damaged by overpaying for a nonexistent product attribute—"All Natural."  *Id.* at ¶¶ 6, 43.  Accordingly, Plaintiff seeks relief for violations of Florida's Deceptive and Unfair Trade Practices Act, Fla Stat. § 501.201 *et seq.* ("FDUTPA") (Count I), false and misleading advertising, Fla Stat. § 817.41 (Count II), unjust enrichment (Count III), breach of express warranty (Count IV).  *See id.* at ¶¶ 38-67.[1]

Presently before the Court is Plaintiff's Motion to Certify Class, ECF No. [36], filed June 27, 2014.  Plaintiff seeks hybrid certification pursuant to Rule 23(b)(3) and (b)(2) of the Federal Rules of Civil Procedure for her FDUTPA claim.  *See id*; *see also* Compl., ECF No. [1] at ¶ 31.  Alternatively, Plaintiff seeks certification of an issue class related to whether the use of the term "All Natural" is false, unfair, deceptive, and/or misleading.  *See* Mot., ECF No. [36].  According to the Complaint, the proposed class is composed of

> All persons in Florida who, from May 2009 to the present, purchased Crisco Pure Vegetable Oil, Crisco Pure Canola Oil, Crisco Pure Corn Oil, and Crisco Natural Blend Oil (the "Class" or "Class members"). Excluded from the Class are anyone that

---

[1] On March 14, 2014, the Honorable Kenneth A. Marra, United States District Judge, dismissed Count IV of the Complaint, and, while leave to amend was provided, Plaintiff opted not to do so. *See* Order, ECF No. [25].

> purchased for resale, the Defendant, any parent, subsidiary or affiliate of the Defendant, any entity in which the Defendant has a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities.

Compl., ECF No. [1] at ¶ 24.  Defendant opposes certification pursuant to Rule 23(b)(3) on four grounds: (1) the proposed class is not ascertainable under Rule 23(a) because there is no administratively feasible method to determine the class; (2) Plaintiff cannot satisfy the commonality requirement under Rule 23(a)(2), nor the predominance requirement of 23(b)(3) as individual issues of liability overwhelm any common issues; (3) Plaintiff cannot satisfy the typicality requirement because her claims are not typical of the claims of the class; and (4) Plaintiff has not offered a competent damages model to assess damages on a class-wide basis. *See* Opp., ECF No. [47].  Additionally, Defendant asserts that Plaintiff is not entitled to an injunctive class pursuant to Rule 23(b)(2) as Plaintiff's claim for injunctive relief has been rendered moot.  *See id.*  Lastly, Defendant opposes the certification of an issue class under Rule 23(c)(4).  *See id.*

## II. DISCUSSION

District courts have broad discretion in deciding whether to certify a class.  *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).  A plaintiff seeking to obtain class certification must demonstrate that the claim meets each of the requirements specified in Rule 23(a), and at least one of the three subsections of Rule 23(b).  *See* Fed. R. Civ. P. 23(b); *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009) (citations omitted); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004); *Elliot v. Carnival Cruise Lines*, No. 02-

23253-CIV, 2003 WL 25677700, at *1 (S.D. Fla. Oct. 17, 2003).  Compliance with Rule 23(a) requires a plaintiff to satisfy four explicit prerequisites:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).  These prerequisites are commonly referred to as the requirements of numerosity, commonality, typicality, and adequacy of representation.  *See Vega*, 564 F.3d at 1265.  Additionally, courts have found that 23(a) contains an implicit requirement, that the proposed Class is "adequately defined and clearly ascertainable."  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1303-04 (11th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).[2]  Upon Rule 23(a)'s satisfaction, the plaintiff must then fulfill any one of Rule 23(b)'s three subsections.  Here, as indicated, Plaintiff seeks a hybrid certification pursuant to Rule 23(b)(3) and (2) as she seeks both monetary and equitable relief.  *See* Compl., ECF No. [1].  Rule 23(b)(3) requires a plaintiff to prove that "[c]ommon questions [] predominate over any questions affecting only individual members; and class resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citation omitted).  On the other hand, certification is appropriate under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

---

[2] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

"The initial burden of proof to establish the propriety of class certification rests with the advocate of the class." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). In order for an action to fall under Rule 23, a party "must affirmatively demonstrate his compliance" with the Rule. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). It is not sufficient that a party simply plead conformity with the requirements of the Rule; instead, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) . . . [t]he party must also satisfy *through evidentiary proof* at least one of the provisions of Rule 23(b)." *Id.* (emphasis supplied); *see also Elliot*, 2003 WL 25677700, at *3 (noting that conclusory statements are insufficient to meet the burden of proof on a motion for class certification). In fact, the Supreme Court has indicated that only after "rigorous analysis" may certification be granted. *See Comcast*, 133 S. Ct. at 1432 (citation omitted); *see also Vega*, 564 F.3d at 1266 ("A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class.") (citation omitted). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1197 (11th Cir. 2003); *see also Comcast*, 133 S. Ct. at 1432 ("Repeatedly, we have emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . .") (internal formatting and quotation omitted). This is the case because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 133 S. Ct. at 1432 (citing *Dukes*, 131 S. Ct.

at 2551) (internal quotation and formatting removed).  It is with this guidance that the Court now meticulously proceeds.

## A.       Plaintiff has Not Demonstrated that the Putative Class is Ascertainable

Before establishing the explicit requirements of Rule 23(a), a plaintiff must first establish that the proposed Class is "adequately defined and clearly ascertainable."  *Little*, 691 F.3d at 1303-04 (quoting *DeBremaecker*, 433 F.2d at 734).  This threshold issue of "ascertainability," relates to whether the putative class can be identified: "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria."  *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (citing *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 97 (S.D.N.Y. 2009)).  These "objective criteria" should be "administratively feasible," meaning that the identification of class members should be "a manageable process that does not require much, if any, individual inquiries."  *Id.* (citation omitted) (reversing district court decision finding ascertainability satisfied where class could be identified by reference to the defendant's records).  The district court must be satisfied that this requirement can be met even before delving into the rigorous analysis of the Rule 23 elements. *See id.*  If a plaintiff fails to demonstrate that the putative class is clearly ascertainable, then class certification is properly denied.  *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (holding that district court denying class certification because the class was not adequately defined or clearly ascertainable did not abuse its discretion and commit a clear error of judgment).

Defendant takes issue with the putative class for two reasons.  First, Defendant contends that Plaintiff has not offered a feasible mechanism for determining the purchasers of the Crisco oils containing the "All Natural" label.  *See* Opp., ECF No. [47] at 23-26.  Second, assuming that

Plaintiff could identify Crisco oil purchasers, the Court would have to make individualized inquiries, specifically, whether the term "All Natural" was a factor in the individual's purchasing decisions, and how each individual defines the term "natural." *See id.* at 26-29. Thus, Defendant asserts that the proposed class contains individuals who have not suffered injury. *See id.* The Court addresses these matters in turn.

       **i.**     **Ascertaining Purchasers of Crisco Oils with the "All Natural" Label**

According to Defendant, the only method to identify purchasers of Crisco Oil would be through consumer self-identification or from Defendant itself. *See id.* at 23-24. Defendant argues that these methods are unreliable, and further asserts that Plaintiff has not offered a viable alternative. *See id.* In support of this contention, Defendant cites *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253 (S.D. Fla. March 3, 2014). In *Karhu*, after purchasing "Meltdown," a product claiming to burn fat and achieve rapid weight loss, a plaintiff initiated a class-action claim for violations of FDUTPA asserting that he was deceived by the false advertisements and misrepresentations. *Id.* at *1. In declining to find that the class of Meltdown purchasers was ascertainable, the Honorable Judge James I. Cohn emphasized the difficulties of determining the class given the nature of the product. *See id.* at *3. Judge Cohn stressed that because the product at issue was a relatively small purchase, it was highly unlikely that potential class members would have retained receipts or other records, making identification via receipt or other proof of purchase untenable. *Id*; *see also* Pl. Depo., ECF No. [49-3] at 47:2-7 (stating that she does not usually keep receipts from grocery purchases). Instead, class members would have to self-identify through the submission of affidavits; however, the Court expressed its concern with this process as well, noting that "[a]ccepting affidavits of Meltdown purchases without verification would deprive [defendant] of its due process rights to challenge the claims of each

putative class member." *See* 2014 WL 815253, at *3 (citing *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 232 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).   By allowing putative class members to submit affidavits, each affidavit would require a "mini-trial[], [] defeat[ing] the purpose of class-action treatment." *Id.* (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 305-09 (3d Cir. 2013)).   Therefore, Judge Cohn found that the plaintiff had failed to suggest a practical means by which class members could easily be identified, and thus, the class was not ascertainable.  *Id.*

Defendant contends that self-identification through affidavit is an unreliable method of identifying putative class members and implores the Court to follow Judge Cohn's reasoning in *Karhu*.  In support, Defendant notes that during the relevant time period, from May 2009 to the present, the term "All Natural" has only appeared on the various Crisco oils intermittently.  *See* Floyd Decl., Def. VP of Marketing, ECF No. [49-4] at ¶¶ 3-4.   Indeed, Plaintiff herself has difficulty recalling the number of times and the different variations of Crisco products that she purchased with any amount of reasonable specificity.  *See* Pl. Depo., ECF No. [49-3] at 83:25-85:2.[3]  In response to this contention, Plaintiff beseeches the Court to reject *Karhu*'s reasoning

---

[3] At deposition, Plaintiff was unable to recall which kinds of Crisco oil she purchased and when:

> Q.    Did you purchase any other type of Crisco oil – have you purchased any other type of Crisco oil since 2009?
> A.    Since 2009 –
> Q.    Uh-huh.
> A.    -- have I purchased any other Crisco products?  I don't recall.  I don't – I don't understand what you – I don't recall the specific dates.
> \*          \*          \*
> Q.    Okay.  So from what you recall, you only purchased Crisco pure canola oil since 2009; is that correct?
> A.    That's – that's all I can remember.  That's all – I don't know if that was the only thing I purchased or not.
> Q.    Okay.  So you might have purchased different – you might have purchased other types of Crisco oils since 2009?

inasmuch as the Court relied on *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013).   In

*Carrera*, the Third Circuit rejected the contention that the submission of affidavits was a reliable

method to identify class members even when the plaintiff had presented assurances that a

screening method could be employed to weed out unreliable and fraudulent affidavits, vacating

the district court's prior certification.   *See id.* at 310-11.   Indeed, some district courts have

expressed concern with *Carrera*'s implications.

Certain California district courts have vehemently rejected *Carrera*, noting that "[w]hile

[*Carrera*] may now be the law in the Third Circuit, it is not currently the law in the Ninth

Circuit."   *McCrary v. Elations Co.*, LLC, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at

*8 (C.D. Cal. Jan. 13, 2014) (citing *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013);

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012), *appeal dismissed*

(Jan. 25, 2013); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011); *Zeisel v.

Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *6 (N.D. Cal. June 7, 2011))

(finding it acceptable that the class definition merely describe "a set of common characteristics

sufficient to allow a prospective plaintiff to identify himself or herself as having a right to

recover based on the description" (internal quotation and citation omitted)); *see also Lilly v.

Jamba Juice Company*, 2014 WL 4652283, *4 (N.D. Cal. Sep. 18, 2014) ("Adopting the *Carrera*

approach would have significant negative ramifications for the ability to obtain redress for

---

A.   I might have.  I don't know.
Q.   Okay.  So it's correct that – or – excuse me.  Do you remember the sizes
     of Crisco oils that you purchased since 2009?
A.   (Shakes head.)
Q.   Do you remember the number of times that you purchased Crisco oils
     since 2009?
A.   I don't recall.

Pl. Depo., ECF No. [49-3] at 83:25-85:2.

9

consumer injuries.   Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase.   Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits."); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *4-6 (N.D. Cal. May 30, 2014), *class decertified on other grounds in Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) (declining to follow *Carrera*); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014) ("Given that facilitating small claims is '[t]he policy at the very core of the class action mechanism,' . . . we decline to follow *Carrera*." (quoting *Amchem Prods.*, 521 U.S. at 617)).   These decisions are premised on the reasoning that "[t]here is no requirement that the identity of the class members be known at the time of certification." [4]   *Astiana*, 291 F.R.D. at 500 (quoting *Ries*, 287 F.R.D. at 536 (internal formatting removed)).   The Eleventh Circuit has offered little guidance on the matter.   While our governing Circuit has clearly defined how the ascertainability requirement is to be interpreted, it has yet to apply it to a factually analogous scenario.   Nonetheless, the Court is bound to work from the Eleventh Circuit's interpretation:

> An identifiable class exists if its members can be ascertained by reference to objective criteria.   The analysis of the objective criteria also should be administratively feasible. "Administrative feasibility" means that *identifying class members is a manageable process that does not require much, if any, individual inquiry.*

---

[4] Admittedly, the California districts lack uniformity.  The Court has come across two cases explicitly following the reasoning in *Carrera*.  *See In re Clorox Consumer Litig.*, 301 F.R.D. 436, 440 (N.D. Cal. 2014); *Sethavanish v. ZonePerfect Nutrition Co.*, 12–2907–SC, 2014 WL 580696, at *4-6 (N.D. Cal. Feb. 13, 2014).

*Bussey*, 562 F. App'x at 787 (emphasis added) (quotation, citation, and formatting omitted). Based on this directive, the Court respectfully declines to follow Defendant's interpretation, an interpretation which would seemingly place a substantially higher burden on a plaintiff attempting to prove ascertainability beyond simple administrative feasibility.  Defendant seeks to require a class-action plaintiff to present proof that the identification of class members will be next to flawless.

Nevertheless, the facts and circumstances of the instant case present substantial difficulties.  Plaintiff's construction of the objective criteria here is straightforward: whether an individual purchased a Crisco product containing the alleged misrepresentation "All Natural." However, during the relevant time period, at least nine different Crisco oils frequented retail establishments.[5]  *See* Opp., ECF No. [47] at 17.  Only four of these oils contained the challenged statement.  *See id.*  Correctly, Plaintiff has limited the putative class to purchasers of only those four oils: Crisco Pure Vegetable Oil, Crisco Pure Canola Oil, Crisco Pure Corn Oil, and Crisco Natural Blend Oil.  *See* Compl., ECF No. [1] at ¶ 24.  Yet the inclusion of the challenged statement was not placed on all four oils uniformly throughout the class period, which extends from May 2009 to the present.[6]  *See id*; Opp., ECF No. [47] at 17.  Based on these facts, the likelihood that an individual would recall not only which specific kind of oil, but also, when that oil was purchased, complicates identification of the putative class.

---

[5] The oils are: Crisco Pure Vegetable Oil, Crisco Pure Canola Oil, Crisco Pure Corn Oil, Crisco Natural Blend Oil, Crisco Frying Oil Blend, Crisco Canola Oil with Omega-3 DHA, Crisco 100% Extra Virgin Olive Oil, Crisco Pure Olive Oil, and Crisco Light Olive Oil.  *See* Opp., ECF No. [47] at 17.

[6] For instance, Crisco Pure Vegetable Oil and Crisco Pure Canola Oil bore the alleged misrepresentation from before 2002 to 2013, whereas Crisco Pure Corn Oil and Crisco Natural Blend Oil contained the labelling from 2010 through 2014 and 2013, respectively.  *See* Opp., ECF No. [47] at 17.  Thus, there are brief times at both ends of the class period where certain oils did not contain the alleged misrepresentation.

Plaintiff contends that the Court should follow the approach used in *Fitzpatrick v. General Mills, Inc.*, where the Court certified a class of purchasers of a low-priced consumer goods relying on affidavits of supposed purchasers.  *See* 263 F.R.D. 687, 690-92, 702 (S.D. Fla. 2010), *vacated on other grounds* 635 F.3d 1279 (11th Cir. 2011).  The reliance on *Fitzpatrick*, however, is misplaced for one critical reason: unlike the instant case where ascertainability is hotly contested, the Court in *Fitzpatrick* never addressed the matter.  Plaintiff's other authority is equally unpersuasive as the products and misrepresentations at issue therein are singular and uniform.  As noted, only some of the Crisco oils bore the "All Natural" label at various times. First, the Court is directed to *Brazil v. Dole Packaged Foods*.  In *Dole*, all of the products at issue included the alleged misrepresentation.  See *Dole*, 2014 WL 2466559, at *6 (finding ascertainability where "all purchasers of the identified [] products are included in the class definition, and all identified [] products bore the same alleged misstatements").  Next, in *Werdebaugh v. Blue Diamond Growers*, the Northern District of California certified a class including purchasers of almond milk products containing alleged misrepresentations.  *See* No. 12-CV-2724-LHK, 2014 WL 2191901, at *3 (N.D. Cal. May 23, 2014), *class decertified on other grounds* 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014).  However, unlike Plaintiff's claims here and akin to the products in *Dole*, the allegedly misleading and unlawful labeling in *Werdebaugh* appeared on *all* products included in the class.  *See id.* at *11 (noting that "all purchasers of Blue Diamond's almond milk products are included in the class definition, and all cartons of the challenged almond milk products bore the alleged mislabeling").  Similarly, the case of *Guido v. L'Oreal, USA, Inc.* is distinguishable in the same manner.  There, the class was comprised of purchasers of a given hair product.  *See* No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *2 (C.D. Cal. July 1, 2013).  The court found the class to be easily ascertainable;

however, like the aforementioned cases, there was a single version of the product at issue, all labeled in the same manner. *See id.* at *1-2, 18-19.  The uniformity of the products and misrepresentations in these cases makes it far easier for a potential class member to recall whether they purchased the good containing the misrepresentation.

The case of *Astiana v. Kashi Co.* is only slightly more on point.  In *Astiana*, a plaintiff sought to certify a class of "all customers who purchased Kashi products during the class period that were labeled as containing 'Nothing Artificial.'"  *See* 291 F.R.D. 493, 500 (S.D. Cal. 2013). Reiterating California legal precedent indicating that the identity of the class members need not be known at the time of certification, the court held that the class was sufficiently definite so that it was administratively feasible to determine.  *Id.*  In so holding, the court highlighted what it deemed to be the problem with the defendant's ascertainability argument: "[i]f class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a consumer class action.'"  *See id.* (quoting *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012), *appeal dismissed* (Jan. 25, 2013)). While the *Astiana* court appears to implicitly reject the Third Circuit's decision in *Carrera*, the decision offers little discussion of whether the labeling at issue was placed on all products in the class, simply stating that "[b]ecause the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation."  *Id.*  Therefore, *Astiana*'s discussion is of little assistance.  Moreover, this Court must follow the guidance of our governing circuit, which requires that ascertainability be determined at the class certification stage.  *See Bussey*, 562 F. App'x at 787 (noting that "identifying class members [should be] a manageable process that does not require much, if any, individual inquiry" (citation omitted)).  The remaining cases cited by

Plaintiff in support of its argument fail to address the ascertainability requirement.  *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 595 (C.D. Cal. 2011) (certifying class of purchasers of homeopathic products without addressing the issue of ascertainability); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, No. SACV07-1306JVS(RNBX), 2008 WL 4906433, at *5 (C.D. Cal. Nov. 13, 2008) (certifying class of purchasers of nutritional supplements without addressing ascertainability).

The Court finds this matter more akin to the case of *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014).  In *Jones*, the plaintiff sought to certify a class of "[a]ll persons in the state of California who, from April 2, 2008, until the date of notice, purchased a Hunt's® canned tomato product bearing the label statement '100% Natural' or 'Free of artificial ingredients & preservatives' but which contained the following ingredients: citric acid and/or calcium chloride."  *Id.* at *1.  Similar to the case at bar, the plaintiff in *Jones* argued that the class could be ascertained by reference to objective criteria, namely, whether the consumer purchased one of the products at issue during the class period. *See id.* at *9.  Further, the plaintiff recommended "photographic verification" and sworn testimony as viable methods for ascertaining the class.  *Id.*  In finding the class to be unascertainable, the Northern District of California recognized that there were "literally dozens of varieties with different can sizes, ingredients, and labelling over time and some Hunt's cans included the challenged language, while others included no such language at all."  *Id.* at *10 (citation and formatting removed).  Thus, the court identified this "subjective memory problem," and found that "the variation in Hunt's products and labels makes self-identification [] unfeasible."  *Id*; *see also Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *15 (N.D. Cal. Nov. 6, 2014) (noting that the facts of *Jones* presented several

difficulties with ascertainability, specifically, that class members would have to not only remember whether they purchased the challenged products, but also whether those products contained the allegedly misleading statement).   This issue with memory, recognized by the court in *Jones*, is the crux of Defendant's argument and the bane of Plaintiff's putative class.

After an extensive review of the record, the Court is inclined to agree that the class is not ascertainable.   The fact that putative class members are highly unlikely to retain proof of purchase for such a low price consumer item is insufficient to defeat certification.   However, taking the aforementioned variations in Crisco products in conjunction with the fact that the challenged product is a low-priced consumer item, of which the normal consumer likely does not retain significant memory about, the likelihood of a potential class member being able to accurately identify themselves as a purchaser of the allegedly deceptive product, is slim.   Not only would the individual need to recall purchasing Crisco oil, but also the specific variety purchased, and the specific date on which it was purchased beyond simply within the period between "May 2009 [and] the present."   Furthermore, the nature of the product at issue makes it less likely for a consumer to recall a specific purchase.   Crisco oil is intended to be an additive ingredient to a final product, rather than a final product directly consumed by the user.   This fact makes it less likely that the consumer will recall the specific purchase of the cooking oil during a specific time frame.   As noted, Plaintiff's own testimony reflects this point.   *See* Pl. Depo., ECF No. [49-3] at 84:11-85:2 (failing to recall the number of times Crisco oils were purchased, when they were purchased, and what variations were purchased).   Under the facts and record presented, self-identification through affidavit is not administratively feasible.[7]   *See Sethavanish*

---

[7] Essentially, Plaintiff seeks to adopt the reasoning utilized by California's district courts, which have confirmed that "[t]here is no requirement that the identity of the class members . . . be known at the time of certification."   *See Dole*, 2014 WL 2466559, at *6 (quoting *Ries*, 287

*v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2014 WL 580696, at *6 (N.D. Cal. Feb. 13, 2014) ("Plaintiff has yet to present any method for determining class membership, let alone an administratively feasible method. It is unclear how Plaintiff intends to determine who purchased ZonePerfect bars during the proposed class period, or how many ZonePerfect bars each of these putative class members purchased. It is also unclear how Plaintiff intends to weed out inaccurate or fraudulent claims. Without more, the Court cannot find that the proposed class is ascertainable.").[8]

As a seeming last resort, Plaintiff offers an alternative method for ascertaining the class at issue: issue subpoenas on the retailers to determine members of the proposed class. *See* Reply, ECF No. [58] at 13. According to Plaintiff, this avenue permits the identification of "over 1,000,000 consumers who purchased Crisco cooking oils during the Class Period" in the form of loyalty and reward cards. *See id.* Additionally, Plaintiff directs the Court to Defendant's internal

---

F.R.D. at 535). The Court does not take issue with the actual identity of the class, but rather, whether identifying class members is a manageable process. *See Bussey*, 562 F. App'x at 787-88. "The Eleventh Circuit . . . has held that one aspect of a clearly ascertainable class is that the identification of class members is administratively feasible." *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 3540811, at *3 (S.D. Fla. July 17, 2014) (denying reconsideration of prior class certification) (citation omitted). The out-of-district authority presented does not demonstrate that self-identification in cases such as this is a reliable and realistic method of identifying purchasers. Due to the multitude of products and varying labels on Crisco oils during the class period, self-identification is an unsound method of determining class membership. *See generally, In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 214 F.R.D. 614, 617 (W.D. Wash. 2003) (noting the difficulties with self-verification due to the "vagaries of memory").

[8] Although, in reaching this conclusion, the Court has relied on cases that have, in turn, relied on *Carrera*, the Court expresses caution with the reasoning of *Karhu* and *Carrera*. While variation in the Crisco oils makes self-identification troublesome in this case, the Court finds no authority that this method is *per se* invalid. Reaching this conclusion would be a devastating blow to the class action device and would ultimately undermine the viability of the class action for small-ticket consumer items. *See Amchem*, 521 U.S. at 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Accordingly, the holding contained herein is expressly limited to the facts presented. The Court does not intend to opine on the continuing viability of self-identification in the class action context.

mechanisms, such as Crisco's website, which allows individuals to register and tracks consumer habits through frequent shopper data.[9]  *Id.* at 14.  Plaintiff has only intimated that retailer records are a *possible* method of identifying class members; she has neither presented evidence nor precedent which would allow the Court to confirm the validity of this approach, nor has she submitted evidence that retailers will be able to specifically identify purchasers through this method.[10]  Plaintiff's singular assertion concerning the mechanism's viability is insufficient.  "In a consumer class action, like this one, where [p]laintiffs intend to rely on retailer records, [p]laintiffs must produce sufficient evidence to show that such records can be used to identify class members."  *See In re Clorox Consumer Litig.*, No. 12-00280 SC, 2014 WL 3728469, at *2 (N.D. Cal. July 28, 2014).  At this time, Plaintiff has not demonstrated the administrative feasibility of identifying class membership through this avenue.[11]  Indeed, Plaintiff admits this fact by noting that this data may become relevant "with additional discovery."  *See* Reply, ECF No. [58] at 14.

Based on these facts, it is very unlikely that the average consumer would be able to identify whether they purchased the specific Crisco product containing the allegedly deceptive

---

[9] Defendant disputes this method of ascertaining class membership, alleging that retailers and distributors do not track point-of-sale customer data in a manner that permits the Court to determine class membership.  Opp., ECF No. [47] at 24-25.

[10] Citing to a reply brief filed in a similar lawsuit in the Northern District of California, *Parker v. J.M. Smucker Co.*, No. C 13-0690 SC (N.D. Cal. 2013), Plaintiff purports to present evidence on this issue.  According to Plaintiff, the plaintiff in *Parker* is "in the process of obtaining records from major grocery retailers in California, in the form of loyalty and reward cards, identifying over 1,000,000 consumers who purchased Crisco cooking oils during the class period."  *See* ECF No. [58] at 13.  However, this statement, citing simply to a reply memorandum in another case, is neither evidence nor authority indicating that retailers possess the records claimed.

[11] Randolph also directs the Court to various digital media which may help identify "frequent shoppers" of Crisco products.  *See* ECF No. [58] at 14.  However, none of this data, such as Facebook "likes," appears to identify purchasers of specific Crisco products, and is unpersuasive on the point at issue.

representation, and Plaintiff has failed to submit sufficient evidence that an alternative, administratively feasible method for determining class membership exists. For these reasons, the class is unascertainable.

### ii.    *Lack of Actual Reliance Does not Defeat Certification*

Next, Defendant contends that the class cannot be ascertained because the purported class includes individuals who were not damaged by the representation "All Natural." *See* Opp., ECF No. [47] at 26-29. For example, according to Defendant, the statement did not harm individuals who maintain a different definition of "natural," as well as those persons that purchased Crisco oil for reasons unrelated to the "All Natural" label. *See id.* Stated different, Defendant challenges the putative class on overbreadth and standing. In response, Plaintiff avers that Defendant's framing of this issue distorts the applicable standard under FDUTPA. *See* Reply, ECF No. [58] at 15-16.

It is axiomatic that the named plaintiffs must have standing for a district court to certify a class action. *See Vega*, 564 F.3d at 1265 (quotation and citation omitted). However, Defendant fails to direct the Court to any binding precedent requiring a district court to make a speculative determination on whether every putative class member can maintain Article III standing, and the Court is unable to locate the same. Some courts have found that the class should be defined in such a manner that anyone within it would have standing. *See Fine v. ConAgra Foods, Inc.*, No. CV 10-01848 SJO CFOX, 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010) (quoting *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCX), 2009 WL 4798873, at *4 (C.D. Cal. Dec. 9, 2009)) (noting that "other courts have held that class definitions should be tailored to exclude putative class members who lack standing" and that "a class must be defined in such a way that anyone within it would have standing"). The Second Circuit, as well as other district courts

within the Ninth Circuit, have agreed with this construction. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (citing *Denney*, 443 F.3d at 264); *see also Fine,* 2010 WL 3632469, at *3. While the Eleventh Circuit has not directly tackled the issue of whether a plaintiff must demonstrate that putative class members have Article III standing at the class certification stage, it has indicated that a district court must, at a minimum, be satisfied that at least one named plaintiff has Article III standing. *See Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) (citing *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)) ("Prior to the certification of a class and before undertaking any analysis under Rule 23, the Court must determine that at least one named class representative has Article III standing to raise each class claim."). Nonetheless, the Supreme Court of the United States has indicated that "Rule 23's requirements must be interpreted in keeping with Article III constraints." *Amchem Prods.*, 521 U.S. at 612-13; *see also Walewski*, 502 F. App'x at 861 (finding no abuse of discretion where certification was denied in part because the class "impermissibly includes members who have no cause of action as a matter of law"). An examination of whether the class is impermissibly overbroad by including individuals who lack standing necessarily implicates the underlying cause of action.

A plaintiff asserting a claim under FDUTPA must establish: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."[12] *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012) (quoting *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla.

---

[12] Actual damages are "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Baptist Hosp.*, 84 So. 3d at 1204 (citing *Rollins v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)). Because damages would be measured through a "price premium," they are uniform throughout the class and do not bear on whether individuals who have no cause of action are impermissibly included in the class.

3d DCA 2008)).  A "deception" occurs when there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Zlotnick v. Premier Sales Group*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citation and quotation omitted).  While some courts have hinted that the causation requirement requires a plaintiff to prove that the consumer actually rely on the deceptive practice, see, e.g., *Kais v. Mansiana Ocean Residences, LLC*, 08–CV–21492–FAM, 2009 WL 825763, at *2 (S.D. Fla. Mar. 25, 2009) (dismissing claim because Plaintiff failed to state that the alleged deceptive act "caused him to enter into the contract . . . or caused him to act differently in any way"), the Eleventh Circuit has plainly resolved this issue, stating that "FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct."  *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (quotation omitted); *see also Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. 1st DCA 2000) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." (internal quotation omitted)).  Instead of actual reliance, a plaintiff must simply prove that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances."  *Cold Stone*, 332 F. App'x at 567.  This same standard applies whether the action is brought by an individual consumer or as a class action.  *See id.* (citing *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. 3d DCA 2000)) ("[M]embers of

a class proceeding under [FDUTPA] need not prove individual reliance on the alleged representation."); *see also Davis*, 776 So. 2d at 974.

Because a plaintiff need not demonstrate actual reliance in order to prove causation, Defendant's argument is unfounded.  The fact that some consumers may have purchased Crisco oils for reasons other than the "All Natural" labeling does not preclude certification.  As noted, the inquiry focuses on whether a reasonable consumer, exposed to the misrepresentation, would likely have been deceived.  *Cold Stone*, 332 F. App'x at 567; *see also Fitzpatrick*, 263 F.R.D. at 700-01, *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011) (noting that "a plaintiff seeking to recover under the FDUTPA need not allege that the deceptive act motivated his or her decision to purchase [the product], but only that an objective reasonable person would have been deceived by [the] deceptive act").  Accordingly, the fact that some class members may not have actually relied on the alleged misrepresentation does not render the class unascertainable.

Nonetheless, for the reasons stated earlier, the class cannot be ascertained.  At this juncture, Plaintiff has failed to set forth an administratively feasible method of determining class membership. The variety of Crisco products and inconsistent labeling complicates the viability of self-identification via affidavit, and, at this stage, Plaintiff has failed to present evidence on whether subpoenas may be utilized to overcome this issue.  Accordingly, on the record presented here, the Court cannot certify the class proposed.  *See Walewski*, 502 F. App'x 857, 861 ("Before a district court may grant a motion for class certification, a plaintiff . . . must establish that the proposed class is adequately defined and clearly ascertainable." (quoting *Little*, 691 F.3d at

1304)).[13]   Although unnecessary, for the purposes of thoroughness, the Court briefly examines

the remainder of the Rule 23 elements, including those issues presented under 23(a) and 23(b).

**B.      Issues Presented under Rule 23(a): Commonality and Typicality**

To recall, a plaintiff seeking to establish a class must affirmatively demonstrate four

elements: numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P.

23(a)(1)-(4).  Defendant merely takes issue with the elements of commonality and typicality.[14]

---

[13] On December 12, 2014, Plaintiff filed a Notice of Supplemental Authority, ECF No. [71] (the "Notice").  The Notice contains a "tentative order" out of the Central District of California, *In re ConAgra Foods, Inc.*, Case No.: 2:11-cv-05379-MMM-AGR (the "Order"), which purports to support her position.  Not only is the order labeled "tentative," but it has not been signed by the presiding judge, the Honorable Judge Margaret Morrow.  As of December 18, 2014, the Court has confirmed that the Central District's docket in *In re ConAgra Foods, Inc.* does not contain the submitted document, despite the Order being dated November 24, 2014.  Indeed, the Central District's docket notes that Judge Morrow currently has the motions under advisement.  *See In re ConAgra Foods, Inc.*, Case No.: 2:11-cv-05379-MMM-AGR, ECF No. [424] (Minute Entry).  Additionally, the Court has contacted Judge Morrow's chambers in order to seek clarification on the use of "tentative orders," who have indicated that the order is not a final order and should not be considered as such. The Model Rules of Professional Conduct state that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal."  Model Rules of Prof'l Conduct R. 3.3(a)(1).  Although Plaintiff's counsel specifically notes that the opinion was tentative, a tentative, unsigned order is not authority.  Therefore, the Court declines to consider this supposed authority.

[14] The elements of numerosity and adequacy of representation are likely met in this case.  Rule 23(a) requires that the proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(3).  Because Defendant has sold, at minimum, millions of units of the Crisco oil at issue in this litigation during the relevant period, a substantial portion of which was sold in Florida, the proposed class satisfies the numerosity requirement.  Under 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).  In a single footnote, Defendant contends that adequacy of representation is not met for the same reasons that typicality is not satisfied.  However, as will be discussed, typicality is satisfied here.  Moreover, no conflict of interest appears to exist between Plaintiff, or her counsel, and the putative class members.  In addition, lead counsel is experienced.  Thus, the Court can conclude that Plaintiff and her lead counsel will adequately represent the interests of the class.

### i.    *Commonality*

The commonality requirement of Rule 23(a)(2) requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof."). A plaintiff's burden in this regard is "light," as commonality "does not require that all questions of law and fact raised be common." *Vega*, 564 F.3d at 1268. In short, the commonality requirement requires proof the court can resolve the questions of law or fact in "one stroke." *See Dukes*, 131 S. Ct. at 2551. Although many issues may be common to all claims, commonality merely requires that there be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355 (citation omitted).

Defendant asserts that there is not a question common to all claimants, but rather, that individual issues predominate. *See* Opp., ECF No. [47] at 29-33. One applicable common question of law and fact is whether the oil is or is not "All Natural," and deceptive to the purchaser. Whether there are varied definitions of natural is more appropriately addressed under the predominance element of Rule 23(b). At this point, whether the "All Natural" label is deceptive to an objective consumer is an issue common to all class members. Accordingly, the element of commonality is satisfied.

### ii.    *Typicality*

In order to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," the plaintiff must generally demonstrate that a "sufficient nexus exists between the legal claims of the named class representatives and those of individual

class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 n.8 (11th Cir. 1992)). Stated differently, "[t]he claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams*, 568 F.3d at 1356-57 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). While commonality is concerned with the group's characteristics as a whole, typicality "refers to the individual characteristics of the named plaintiff in relation to the class." *Vega*, 564 F.3d at 1275 (citation omitted). Like with the commonality requirement, "factual differences among the claims of the putative class members do not defeat certification." *Veal*, 236 F.R.D. at 577-78 (quoting *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *abrogated on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 126 S. Ct. 1195 (2006)); *see also Williams*, 568 F.3d at 1357 (quoting *Murray*, 244 F.3d at 811) ("The typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories.").

Plaintiff asserts the existence of a single misrepresentation: Crisco oils are not "All Natural," despite being labeled as such. The fact that Plaintiff may maintain a different definition of "natural" as compared to other consumers is insufficient to defeat this requirement. Although Defendant contends that Plaintiff's definition of "natural" is atypical and idiosyncratic, the Court is not inclined to agree. The FDA has "repeatedly declined to adopt formal rule-making that would define the term 'natural.'" *See Krzykwa v. Campbell Soup Co.*, 946 F. Supp. 2d 1370, 1374-75 (S.D. Fla. 2013). The Court is unwilling to make the decisive factual determination that the term "natural" encompasses products utilizing GMOs and other products. As the parties have clearly indicated with conflicting evidence, the definition of "natural"

24

remains a fiercely disputed term in today's marketplace.  Defendant admits that "there is no uniform definition of natural," Opp., ECF No. [47] at 18-19, yet implores the Court to find that Plaintiff's definition is abnormal.  The typicality requirement merely requires that the class representative possess the same interest and suffer the same injury as the putative class members. *See Vega*, 564 F.3d at 1275 (citing *Bushby*, 513 F.3d at 1322).  Here, each putative class member "must prove the same three elements," see *Fitzpatrick*, 263 F.R.D. at 698, that Defendant's representation was a deceptive act, that the deception would deceive an objectively reasonable consumer, and damages.  In sum, Plaintiff's claim has the same essential characteristics of the claims at-large, thereby satisfying the typicality requirement.

The Court finds that Plaintiff has satisfied each of Rule 23(a)'s requirements.  For comprehensiveness, the Court once again decides to go further, and examine the requirements of Rule 23(b) as a plaintiff seeking certification must demonstrate compliance with both Rule 23(a) and at least one provision of  Rule 23(b).  Plaintiff argues that this matter is appropriately certified in two fashions, under Rule 23(b)(3) and 23(b)(2).

**C.     Issues Presented under Rule 23(b)(3): Predominance and Plaintiff's Damages Model**

Rule 23(b)(3) certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Thus, Rule 23(b)(3) has two elements: (1) predominance, and (2) superiority.

In order to satisfy the predominance requirement, a plaintiff must demonstrate that the individual injury resulting from the alleged FDUTPA violation was "capable of proof at trial through evidence that [was] common to the class rather than individual to its members."

*Comcast*, 133 S. Ct. at 1430 (citation omitted).   Additionally, this inquiry requires that the alleged damages emanating from the injury be "measurable on a class-wide basis through use of a common methodology."  *Id.* (internal quotation and citation omitted).  The Eleventh Circuit's recitation of this requirement in *Babineau v. Federal Express Corp.* is both thorough and concise:

> Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.  On the other hand, common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.  Certification is inappropriate if the plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims.  The predominance inquiry requires an examination of the claims, defenses, relevant facts, and applicable substantive law to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant.

*Babineau*, 576 F.3d at 1191 (internal formatting and citations omitted).   "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 133 S. Ct. at 1432 (citing *Amchem Prods.*, 521 U.S. at 623-624); *Dukes*, 131 S. Ct. at 2558)) (noting that the provision is an "adventuresome innovation [] designed for situations in which class-action treatment is not as clearly called for") (internal formatting and quotation omitted).  Indeed, a district court conducting a Rule 23(b)(3) inquiry is obligated to take a "close look" at whether common questions predominate.  *See id.* (citations omitted).  Because predominance relates to individual issues regarding liability, the elements of the underlying cause of action are critical.

Here, Defendant argues that the lack of consensus surrounding the definition of "natural" and the fact that the final product, cooking oil, is used to cook or bake, rather than a product

directly consumed, makes it difficult to determine whether the label of "All Natural" would be deceptive to the reasonable consumer on an objective, non-individualized basis.

Again, the case of *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) merits discussion.  In *Jones*, a plaintiff brought claims for violations of various California consumer protection statutes stemming from Hunt's use of the term "100% Natural" on canned tomato products despite the products including other allegedly unnatural ingredients such as citric acid or calcium chloride.  *See id.* at *1.  Noting that there was no fixed meaning for the word "natural," the Northern District of California held that individual issues predominated because, among other things, the plaintiff had not demonstrated that the "100% natural" claim was material to reasonable consumers, despite accepting the fact that the representation may be material to *some* consumers.  *Id.* at *15-16.  The court highlighted further deficiencies, noting that there existed "individualized purchasing inquiries" related to which specific product was purchased, how many were purchased, and whether the kinds purchased contained the allegedly false information.  *See id.* at *16.  Based on the multitude of factual discrepancies between purchasers, the court was satisfied that individual issues predominated over common ones.  *See id.*  Similarly, in *Astiana v. Kashi Co.*, the Southern District of California found that an "All Natural" representation was not necessarily material to all consumers as it lacked a uniform definition.  *Astiana*, 291 F.R.D. at 508 (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (noting that individual class members' interpretations of the terms at issue "may very well accommodate the presence of the challenged ingredients").

Although *Jones* and *Astiana* were cases pursued under California consumer protection statutes (some requiring an element of materiality), and not FDUTPA, the reasoning and

conclusions reached therein are nonetheless persuasive on the Court here.  Under FDUTPA, the labels at issue must have been "likely to mislead the consumer acting reasonably in the circumstances," that is, a probability, not simply a mere possibility, of deception.  *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000) (citation omitted) (applying Federal Trade Commission standard and noting that the standard is "likely to mislead," not "tendency and capacity to mislead").[15] Plaintiff correctly notes that the predominant issue here is whether the challenged misrepresentation "was likely to deceive a consumer acting reasonably in the same circumstances," *Cold Stone*, 332 F. App'x at 567. However, like the hurdles presented  there when attempting resolve the issue of ascertainability, Plaintiff has not demonstrated that an objectively reasonable consumer would agree with her interpretation of "all natural."  Plaintiff's evidence supports the assertion that the use of GMOs is a widely disputed issue; however, this evidence, in and of itself, demonstrates the uncertainty with this question, and unequivocally exposes the fact that there is a lack of consensus on the use of such products.[16]  *See also Krzykwa*, 946 F. Supp. 2d at 1374-75 (noting that the FDA has "repeatedly declined to adopt formal rule-making that would define the term 'natural'").

---

[15] FDUTPA incorporates those guidelines and standards set forth pursuant to the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.*  Fla. Stat. § 501.203(3).

[16] Plaintiff also asserts that an objectively reasonable consumer would not consider a product to be "all natural" where a known neurotoxin is present in the crude oil.  *See* Ex. 8, Volker Depo., ECF No. [36-8]. Again, Plaintiff provides little to no evidence for this assertion.  The Consumer Reports Article cited in support merely notes that "refined oils *may* have been extracted with hexane." *See* Ex. 9, Article, ECF No. [36-9].  Coupled with the deposition testimony, Plaintiff infers that Crisco products—all Crisco products—are extracted with hexane.   The Court respectfully declines to rely on this unsubstantiated inference.  Further, Plaintiff's assertion that residual hexane has been detected in *Defendant's* final product, is wholly unsupported; the Consumer Reports Article is in no way specifically directed at Defendant's products.  *See id.*  This scant evidence and the inferential leaps necessary to reach the conclusions presented do not indicate that the products at issue are unquestionably not "all natural."

The matter is further complicated by the fact that the majority of Defendant's products did not bear the challenged labelling and that the class includes products which did not contain the alleged misrepresentation during the entire class period.   Like with *Jones*, these factual discrepancies create individualized factual issues.  *See Jones*, 2014 WL 2702726, at *16 (holding that individualized inquiries "will be required to determine how many and which kind of [Defendant's] products each class member bought").   Moreover, while Plaintiff again relies on *Fitzpatrick*, the case is inapposite.   The Court in *Fitzpatrick* noted that a mix of advertising statements would not defeat a finding of predominance where the overarching theme of the advertising messages remained homogenous. *See* 263 F.R.D. at 699-700. However, this is clearly not a factually analogous scenario.   Unlike the situation in *Fitzpatrick*, Plaintiff has failed to demonstrate with competent evidence that Crisco oils "explicitly and continually" presented the deceptive message to the public in a manner that would support finding that any purchaser of Crisco products was subject to the alleged misrepresentation, regardless of which product was purchased or when it was purchased.  The *Fitzpatrick* Court was presented with a single product, advertised as containing a single, homogenous misrepresentation.

Plaintiff has not been established whether the use of the term "All Natural" in this context would deceive an objectively reasonable consumer. Thus, any predominant issues succumb to individualized issues of fact, namely, whether the *individual* believes a product labelled as "All Natural" derived from GMOs is indeed not "all natural," and whether the class member actually purchased a product containing the challenged label.  *See Babineau*, 576 F.3d at 1191 (noting that "[c]ertification is inappropriate if the plaintiffs must still introduce a great deal of

individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." (internal citations omitted)).[17]

Finally, predominance also requires that damages resulting from the injury be measurable on a class-wide basis through use of a "common methodology." *Comcast*, 133 S. Ct. at 1430 (internal citation and quotation omitted). "[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* Although the "[c]alculations need not be exact," the Supreme Court has again instructed lower courts to conduct a "rigorous analysis" to determine whether the purported damages model fits the liability case. *Id.* at 1433. Actual damages for a claim brought under FDUTPA "is the difference in the market value of the product or service in the condition which it was delivered and its market value in the condition in which it should have been delivered . . . ." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (citation omitted); *see also Marty v. Anheuser-Busch Companies, LLC*, No. 13-23656-CIV, 2014 WL 4388415, at *10 (S.D. Fla.

---

[17] Citing *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013), Plaintiff asserts that that she need not "show that the elements of [her] claim are susceptible to classwide proof." *Id.* at 1196. However, the Supreme Court in *Amgen* was presented with a securities fraud complaint and, as such, the underlying issue hinged on whether the purported misrepresentations materially affected the stock price, as was required by § 10(b) of the Securities Exchange Act of 1934, 14 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. *See id.* at 1190-91. Under that cause of action, a court is entitled to presume that investors relied on public, material representations where the market is shown to be efficient. *Id.* at 1192-93 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 245-47 (1988)). Although this presumption is rebuttable, the question of materiality is nonetheless an objective one, common to the class; the failure of proof on an element of materiality "would end the case once and for all." *Id.* at 1196. Thus, in an action involving the aforementioned presumption, proof of materiality will cause the claim of the Rule 10b-5 class to rise or fall in its entirety. *See id.* However, here, Plaintiff's claims of deceptive conduct are not so analogous; a determination of whether the conduct is deceptive is not susceptible to a uniform presumption like in *Amgen*.

Sept. 5, 2014) ("[U]nder Florida law, a plaintiff who alleges that he or she has paid a premium price for a product as a result of a defendant's misrepresentation has pled damages under FDUTPA."). Accordingly, Plaintiff asserts that the measure of damages is the price premium consumers paid based on the "All Natural" misrepresentation. *See* Mot., ECF No. [36] at 22-23.

Plaintiff has suggested a method by which damages may be estimated on a class-wide basis: hedonic regression and/or conjoint analysis. *Id.* at 23. According to Plaintiff, this method can measure the value of the "All Natural" attribute as a part of the total retail price of the oil, thereby calculating the premium associated with the misrepresentation. *Id.* Other courts have found that this method of analysis satisfies *Comcast*'s requirement. For instance, in *Werdebaugh*, the Northern District of California, after conducting a rigorous analysis, deemed that a regression model controlling for a variety of other factors was a viable means for determining class-wide damages. *See Werdebaugh*, 2014 WL 2191901, at *26. However, unlike *Werdebaugh*, Plaintiff has simply stated, in a conclusory fashion, that hedonic regression will be able to calculate the premium included in Defendant's products; Plaintiff has made no attempt to present the Court with an example or summary of the model to be applied. *Compare id.* at *24-26 (conducting comprehensive analysis of the plaintiff's damages model).[18]

The Supreme Court in *Comcast* specifically rejected the notion that it was unnecessary to decide whether the methodology put forth was merely speculative, and that this proposition "would reduce Rule 23(b)(3)'s predominance requirement to a nullity." 133 S. Ct. at 1433. In *Guido v. L'Oreal, USA, Inc.*, the Central District of California denied class certification in part

---

[18] In fact, as of the writing of this Order, the Northern District of California has decertified the class in *Werdebaugh*. *See Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014). After thorough reexamination of the plaintiff's proposed damages model, the court found the model to be flawed. *Id.* at *8-15. Noting that the regression model did not satisfy *Comcast*, the court held that the predominance requirement had not been met. *See id.*

31

because plaintiffs had failed to support their proposed method of awarding relief on a class-wide basis. *See* No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *15-16 (C.D. Cal. July 1, 2013). In so holding, the Court noted that *Comcast* required "evidence demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability." *Id.* at *15 (citation omitted). Thus, *Guido* recognized that in order to satisfy *Comcast*, a plaintiff must actually demonstrate, through evidentiary proof, that class-wide damages are capable of measurement, not simply assert that it is so. *See id.* at *15-16. Noting that the damages measurement under plaintiffs' theory of liability requires "attaching a dollar value to the impact of the false advertising," the court ultimately found that this requirement had not been satisfied because "plaintiffs have not submitted expert testimony actually demonstrating a gap between the true market price of [the product] and its historical market price." *Id*; *see also Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 25-26 (D.D.C. 2012) (pre-*Comcast* decision declining to certify class under Rule 23(b)(3) where proposed methodology was vague and expert had not even informed the court of the "precise analyses he intended to undertake").

The Court agrees with Plaintiff's assertion that *Comcast* does not require her to prove the exact amount of damages suffered, see Reply, ECF No. [58] at 19; however, the question under *Comcast* does not pertain to the actual damages incurred, but rather, whether those damages are capable of class-wide measurement. Contrary to Plaintiff's contention, more is required than simply "[d]emonstrating the existence of a viable damages model." Mot., ECF No. [36] at 24. Plaintiff's theory of liability rests on the fact that Defendant's product contained a "price premium" by virtue of the "All Natural" label. Like with *Guido*, Plaintiff has not demonstrated that the proposed methods will be capable of measuring damages on a class-wide basis and tying those damages to the specific issue of liability, that is, the "All Natural" label. Other than the

bald, unsupported assertion that this method will work, Plaintiff presents no hard-and-fast evidence that the premium is capable of measurement. Plaintiff merely asserts that other courts have found such models to be feasible mechanisms by which damages could be measured and that this court should do the same, yet, as mentioned, no evidence on the actual model to be applied has been submitted, nor has Plaintiff demonstrated that the model will isolate premium received by the inclusion of the alleged misrepresentation. *See Werdebaugh*, 2014 WL 7148923, at *14 ("Plaintiff has failed to show that his proposed damages stemmed from the defendant's actions that created the legal liability." (internal citation and quotation omitted)). Accordingly, Plaintiff has failed to present sufficient evidence of a viable damages model capable of estimating damages on a class-wide basis as is required by *Comcast*.[19]

---

[19] In reply to Defendant's opposition, Plaintiff has submitted the four-page declaration of Roderick C. Moe, CPA. *See* Decl. of R. Moe, ECF No. [58-10]. The declaration is phrased in the hypothetical, noting that hedonic regression "will allow the researcher to isolate the factors, attributes, or characteristics that contribute to the price of a product, in this case Crisco oil." *Id.* at 3. More critically, the declaration was submitted with Plaintiff's reply; no mention of it is made in the moving papers. Defendant cries foul and seeks to strike the declaration. *See* Mot. to Strike, ECF No. [60]. This Court has noted that it "cannot consider new arguments raised for the first time in a reply brief." *Powell v. Carey Int'l, Inc.*, 490 F. Supp. 2d 1202, 1206 (S.D. Fla. 2006) (citing *Herring v. Secretary. Dept. of Corrections*, 397 F.3d 1338 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'")). Plaintiff contends that this is not a "new argument," but simply a rebuttal to Defendant's argument regarding the determination of damages. *See* Resp. to Strike, ECF No. [68]. Yet by failing to include the declaration in the moving papers, Plaintiff has stripped Defendant of its ability to respond to the assertions contained therein. While the Court declines to strike the affidavit as such a measure is a "drastic remedy" often "disfavored by the courts," *Mayorga v. Deleon's Bromeliads, Inc.*, No. 13-20101-CIV, 2014 WL 1330755, at *2 (S.D. Fla. Mar. 31, 2014) (citing *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013)), the Court will not consider it in support of the matter at which it is directed. This evidence, which was required to support Plaintiff's damages theory, should have been submitted with the Motion, not later as a last resort. Even assuming that the report was timely, it would likely not pass muster under *Comcast*, as it is terse and lacking in detail. Nonetheless, Defendant's Motion to Strike, ECF No. [60], is denied.

For the aforementioned reasons, Plaintiff has failed to satisfy the predominance requirement at this juncture because she is unable to demonstrate that the alleged injury in this case "capable of proof at trial through evidence that [was] common to the class rather than individual to its members," and that damages be "measurable on a class-wide basis through use of a common methodology." *Comcast*, 133 S. Ct. at 1430 (citations omitted).   Therefore, Plaintiff has failed to meet the requirements of Rule 23(b)(3), and, even if the class had been deemed ascertainable, class certification would still not be warranted at this time.[20]

**D.     While not Moot, Plaintiff has Failed to Properly Assert an Injunctive Class**

An injunctive class certification is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).   Defendant asserts that Plaintiff is not entitled to an injunctive class under Rule 23(b)(2) because the claim is now moot as Defendant has "removed or is in the process of removing the challenged 'All Natural' label from Crisco Oils," and "has no intention of resuming the use of the challenged label on the packaging of its Crisco Oils."   *See* Opp., ECF No. [47] at 44.   In response, Plaintiff disagrees, arguing that Defendant has not met the burden of

---

[20] With respect to the second requirement under Rule 23(b)(3), A class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "[T]he predominance analysis has a tremendous impact on the superiority analysis because when common issues predominate over individual issues, a class action lawsuit becomes more desirable as a vehicle for adjudicating the plaintiffs' claims." *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 698 (S.D. Fla. 2010) (citation omitted).   The individualized issues presented regarding the interpretation of "All Natural" in the eyes of the objectively reasonable consumers indicate that a class action is not the superior method of adjudicating the controversy.  *See Karhu*, 2014 WL 815253, at *11 (denying certification in regards to the superiority element because "here is no administratively feasible way of ascertaining the identity of individual class members").

showing "the allegedly wrongful behavior could not reasonably be expected to recur."  *See*

Reply, ECF No. [58] at 25-26.

The Supreme Court has indicated that "[a] case might become moot if subsequent events

make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

The onus is on the party claiming mootness to demonstrate that the challenged conduct cannot be

reasonably expected to recur.[21]  *Id.*  The Court has characterized this burden as "heavy" and

"formidable."  *Id*; *Rich v. Sec'y, Florida Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013)

("Since the defendant is free to return to his old ways, he bears a heavy burden of demonstrating

that his cessation of the challenged conduct renders the controversy moot.").  Defendant has not

met this burden.  Simply stating that it has no intention to resume the disputed practice is

insufficient for the Court to conclude that the matter is now moot.

Defendant fails to address the merits of the injunctive class, and both parties fail to

acknowledge that "[m]onetary relief may be obtained in a Rule 23(b)(2) class action so long as

the predominant relief sought is injunctive or declaratory."  *Murray*, 244 F.3d at 812 (citation

omitted); *see also Dukes*, 131 S. Ct. at 2557 (holding that 23(b)(2) certification is not proper

where the monetary relief is not incidental to the injunctive or declaratory relief).  Thus, in order

to maintain an injunctive class where the relief sought is both monetary and injunctive or

declaratory relief, "declaratory or injunctive relief must be the predominant remedy requested for

the class."  *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 695 (S.D. Fla. 2001) (citing

*Murray*, 244 F.3d at 812).  If the predominant relief requested is monetary, than the court should

---

[21] Citing *American Fed'n of Gov't Employees, AFL-CIO v. Brown*, 866 F. Supp. 16, 19 (D.D.C. 1994), a case decided prior to *Friends of the Earth*, Defendant incorrectly places the burden of demonstrating mootness on Plaintiff.  As *Friends of the Earth* clearly states, the burden falls on "the party asserting mootness," which, in this matter, is Defendant.  *See* 528 U.S. at 170.

not certify the class under Rule 23(b)(2).   *See id.* (citations omitted).   "Monetary relief predominates in (b)(2) class actions *unless it is incidental to* requested injunctive or declaratory relief."   *Murray*, 244 F.3d at 812 (emphasis added) (internal citation and formatting omitted). The Eleventh Circuit has set forth the criteria to determine whether monetary damages are merely incidental:

> [Incidental damages are] damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief . . . .   Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established . . . .   Liability for incidental damages should not . . . entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Murray*, 244 F.3d at 812 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)); *see also DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (11th Cir. 2012).   In sum, money damages are "incidental" "only when class members would be automatically entitled to them once class-wide liability is established."   *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 682 (S.D. Fla. 2007) (internal citation and quotation omitted).   Thus, before certifying an injunctive class, a court is left to examine two requirements: "(1) whether [d]efendant has acted on grounds generally applicable to the class as a whole, and if so, (2) whether declaratory or final injunctive relief is the appropriate and primary remedy."   *Id.* (citation omitted).

As noted, neither party addresses this matter.   Notably, Plaintiff has made no effort to demonstrate that the money damages, which appear to be the primary remedy sought, are merely incidental to the injunctive relief.   In fact, Plaintiff dedicates a single page of her twenty-eight page motion to asserting that an injunctive class is warranted.   Upon the limited record on this

36

matter, the Court respectfully declines to grant this relief.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.  The court will not do his research for him." (internal quotations omitted)).

### E.      An Issue Class under Rule 23(c)(4)

Lastly, as an alternative, Plaintiff proposes certification pursuant to Rule 23(c)(4).  *See* Mot., ECF No. [36] at 28.  Plaintiff argues that "the question of whether [Defendant] has misled consumers by labeling Crisco Oils as being 'All Natural' when, in fact, they are made from GMOs is a question involving a single manufacturer and a uniform representation, placed prominently on the front of all Crisco Oil labels sold throughout the Class Period."  *Id.* Plaintiff's argument on this matter is limited to a mere two sentences.

Under Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  However, courts "have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement."  *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630 (S.D. Fla. 2010) (quoting *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 481 (S.D. Fla. 2006)).  As the Court finds that predominance has not yet been demonstrated, certification of an issue class is also inappropriate.  *See In re Am. Commercial Lines, LLC*, No. CIV.A. 00-252, 2002 WL 1066743, at *13 (E.D. La. May 28, 2002) (explaining "that the cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement, before Rule 23(c)(4) becomes available to sever common issues for class trial")

(cited with approval in *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *8 n.8 (S.D. Fla. Sept. 1, 2006)).

### III. CONCLUSION

For the foregoing reasons, the Court finds that certification of the proposed class is not warranted at this time.  Critically, at this juncture, Plaintiff has failed to demonstrate that the putative class is ascertainable, and, further, fails to satisfy the predominance requirement of Rule 23(b)(3).  Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Request for Oral Argument of Plaintiff's Motion for Class Certification, **ECF No. [59]**, is **DENIED**.

2. Plaintiff Melissa Leigh Randolph's Motion to Certify Class, **ECF No. [36]**, is **DENIED WITHOUT PREJUDICE**.

3. Defendant J.M. Smucker Co.'s Motion to Strike New Evidence and Expert Report Submitted with Plaintiff's Reply Brief, **ECF No. [60]**, is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of December, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

38